**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Delberta Manuel Almaraz, ) | No. CV 10-1348-PHX-FJM |
| )  Plaintiff, ) | **ORDER** |
| ) vs. ) | |
| ) City of Mesa, et al., ) | |
| )  Defendants. ) | |
| ) | |

The court has before it defendants City of Mesa, Detective Nathan Schlitz, Detective Nicholas Lien, and Officer Alicia Reagan's amended motion for summary judgment (doc. 60), plaintiff Delberta Manuel Almaraz's response (doc. 63) and defendants' reply (doc. 68). We also have plaintiff's motion to withdraw an exhibit and replace it with a redacted version (doc. 71). This action arises from the death of plaintiff's daughter, fifteen-year-old Celestina Bianca Manuel, who was shot by Schlitz. Plaintiff brings the action individually and on behalf of Manuel's estate. She asserts claims for (1) excessive force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, (2) negligence, (3) assault, (4) battery, (5) and wrongful death by excessive force.

**I**

Plaintiff moves to withdraw an expert report by Gaylan Warren attached as Exhibit 5 to her "Motion to Extend Time to Provide Expert Reports" (doc. 55). She seeks to replace it with a redacted version because the expert report references an FBI report, and information

disclosed by the FBI is subject to a protective order (doc. 14). However, documents may not be "withdrawn" from the docket, nor "replaced" by another submission. The only way to limit access to a document that has been filed is a motion to seal. We therefore deny plaintiff's motion.

**II**

We take undisputed facts as true and consider disputed facts in the light most favorable to plaintiff. Anthoine v. North Central Counties Consortium, 605 F.3d 740, 745 (9th Cir. 2010). On May 28, 2009, Officers Schlitz and Lien responded to a call about a physical fight involving glass bottles at an apartment complex. When they arrived, they observed three adults in the parking lot, one of whom had a cut hand with a towel wrapped around it. Another officer at the scene, Detective Pollard, walked towards a black Mustang that had been idling. The Mustang then proceeded towards the exit, ignoring Pollard, who was walking alongside the car and yelling for it to stop. Plaintiff's Statement of Fact, ("PSOF") ¶ 9 (doc. 66). According to defendants, the driver, Gumercindo Balderas, drove straight at Pollard. Defendants' Statement of Fact, ("DSOF") ¶ 5 (doc. 61). Balderas ultimately pled guilty to aggravated assault on Pollard. Id., ¶ 6.

As the Mustang left the lot, Schlitz reported its description and license plate. An Air Unit arrived and tracked the Mustang. The Air Unit reported that the Mustang was in a neighboring lot, so Officer Brazle drove into that lot, pulled in behind the Mustang, and pointed his weapon at the car. Balderas then pulled out of the parking stall, and hit the front of Brazle's vehicle. According to defendants, Brazle had to jump out of the way of getting hit. DSOF, ¶ 9. Balderas pled guilty to aggravated assault on Brazle. Id., ¶ 14.

Balderas then left the second parking lot and proceeded onto Country Club Road. Lien and Schlitz followed the Mustang in their car, as did the Air Unit. Lien and Schlitz briefly activated their siren and lights, but Balderas did not stop. Balderas pled guilty to unlawful flight. DSOF, ¶ 15. The officers followed the car for several miles. PSOF, ¶ 38. According to Schlitz, Balderas was driving recklessly and ran through at least one red light. Id., ¶ 49. Believing that the fleeing Mustang presented a danger to anyone on the road, Lien

and Schlitz decided to execute a precision immobilization technique ("PIT") maneuver to stop the car and apprehend the driver. Schlitz drove the police car in front of the Mustang in order to stop it. According to Balderas, the police car hit the Mustang twice. Id., ¶ 63. The cars were left facing each other, the front of the driver's side of the police car pressed against the driver's side of the Mustang. See PSOF, ex. 22, "Photographs" (doc. 66-4).

Schlitz exited on the passenger side and stood near the police car. He drew his weapon and pointed it towards the driver of the Mustang. Lien exited from the driver's side and stood somewhere near the Mustang. Schlitz observed the Mustang revving and rocking back and forth, and believed that Lien was still inside the police car, trapped there. Schlitz believed the Mustang was stuck to the police vehicle, and that the driver was trying to shake the Mustang loose. Schlitz claims he was afraid the Mustang would become free, and hit Lien before Lien could get out of the way. DSOF, ¶ 29. However, according to plaintiff, the Mustang could not move because the PIT blew out the clutch on the car. PSOF, ¶ 80. The position of the car did not change after the PIT.

After between ten and thirty seconds, Schlitz began shooting at the Mustang. PSOF, ¶¶ 69–70. According to Balderas, the shooting began immediately after the PIT, and he heard no verbal warnings first. Id., ¶ 103. Schlitz fired six times in the direction of the Mustang's driver's window. The window was closed and tinted. Schlitz did not know that Manuel was sitting in the backseat of the car. One of Schlitz's shots killed her.

The City of Mesa determined that the defendants' actions were in compliance with the department's use of force policy.

**III**

Defendants argue that plaintiff's claim for excessive force in violation of the Fourth Amendment fails because Schlitz's actions were objectively reasonable. The "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872 (1989). We consider the totality

of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Our analysis turns on the threat Balderas posed, "the most significant Graham factor." Brooks v. City of Seattle, 599 F.3d 1018, 1028 (9th Cir. 2010). The crimes at issue in this case, possible involvement in a fight and fleeing the police, are serious. It is also clear that Balderas was attempting to evade arrest. In considering the threat, we must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97, 109 S.Ct. at 1872. "[W]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Brosseau v. Haugen, 543 U.S. 194, 197–98, 125 S.Ct. 596, 598 (2004) (citing Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701 (1985)). If Schlitz had probable cause to believe that Balderas posed a threat of serious physical harm to Lien, his use of force was not constitutionally unreasonable.

Defendants contend that Lien was facing imminent death if the Mustang broke free. Motion at 9. They argue that whether the car was held back because it was stuck to the police vehicle or because it could not change gears is not relevant to the objective reasonableness of Schlitz's fears. According to defendants, because the situation was rapidly evolving and dangerous, Schlitz was reasonable in employing deadly force against Balderas. They argue that the fact that one bullet struck the decedent does not give rise to a constitutional violation.

Plaintiff argues that the series of decisions leading up to the shooting were unreasonable. She claims that the officers' decision to chase the Mustang was unreasonable because their beliefs that Balderas committed aggravated assault against an officer, was involved in a violent fight, and was driving recklessly were all unreasonable. Response at 4. She further contends that Schlitz and Lien should have checked with the other officers

at the scene of the fight to determine whether the Mustang's driver in fact represented an imminent danger to anyone. Plaintiff further contends that the officers' decision to execute a PIT was unreasonable.

Plaintiff also argues that the shooting was excessive because Schlitz's belief that the Mustang would break free and hit Lien was unreasonable. Plaintiff claims that the cars were not connected to each other, the Mustang did not move before Schlitz began shooting, and that Lien was not trapped in front of the car, but rather was standing four feet in front of it with his gun drawn. Response at 7–8. According to plaintiff, nothing prevented Lien from getting out of the way of the car, even if it had been moving.

We cannot conclude that Schlitz's use of deadly force was reasonable as matter of law. "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. This is because such cases almost always turn on a jury's credibility determinations." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (citations omitted). The officers' decision to pursue Balderas, after he ignored an officer's order to stop his vehicle, nearly hit an officer, fled the scene, hit a police vehicle, and then recklessly drove away, was reasonable. We do not question the officers' decision to execute a PIT after Balderas showed continuing disregard for law enforcement. And certainly the situation in which Schlitz found himself following the PIT was "tense, uncertain, and rapidly evolving." Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010) (finding use of deadly force reasonable after driver had failed to yield to police commands and vehicle was accelerating). It is also undisputed that a vehicle can be a deadly weapon. U.S. v. Anchrum, 594 F.3d 1162, 1164 (9th Cir. 2010).

However, there remain disputed issues of material facts related to the reasonableness of Schlitz's fears about the danger that Lien faced when Schlitz decided to shoot six times at the Mustang. Schlitz's use of deadly force would not have been "objectively reasonable" if a fact finder determines that he did not have probable cause to believe that Balderas posed

- 5 -

a threat of serious physical harm to Lien. A fact finder may decide that the Mustang was not moving at the time, either because it was not capable of moving or because Balderas was not attempting to move it. Additionally, a fact finder may determine that Lien had sufficient time to move out of the way of the car before he would have been hurt by any acceleration forward. In either scenario, Schlitz would not have had probable cause to believe that Balderas posed a threat of serious harm to Lien, and his use of force would not have been justified. We therefore cannot grant summary judgment on plaintiff's Fourth Amendment excessive force claim against defendant Schlitz.

Plaintiff concedes that she does not have an excessive force claim against defendant City of Mesa, pursuant to 42 U.S.C. § 1983. Response at 14. We therefore grant summary judgment to defendant City of Mesa on plaintiff's Fourth Amendment claim.

**IV**

Defendants argue that even if Schlitz's use of deadly force was excessive, he is entitled to qualified immunity because he believed the amount of force used was appropriate. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009). The test for qualified immunity entails two steps. We consider whether the facts shown make out a violation of a constitutional right, and, if so, whether the law was "clearly established at the time of defendant's alleged misconduct." Id., 555 U.S. at 231, 129 S.Ct. at 815–16. "Qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information" he possessed. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1443 (9th Cir. 1991).

Schlitz is not entitled to qualified immunity as a matter of law. The same issue of fact that precludes summary judgment on plaintiff's excessive force claim prevents a finding of qualified immunity: whether Schlitz reasonably believed Lien was in danger when he fired six times at the Mustang. In relation to defendants' claim of qualified immunity, "the

determination of what conduct underlies the alleged violation-what the officer and claimant did or failed to do-is a determination of fact." Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993). If, as plaintiff contends, there was no reasonable basis for Schlitz to believe Lien was in harm's way, Schlitz's conduct would support a claim for excessive force and would violate clearly established law. If Lien was not in danger of being hit, a reasonable officer in Schlitz's position could not have believed his conduct was lawful. See Garner, 471 U.S. at 11, 105 S.Ct. at 1701 (use of deadly force violates suspect's Fourth Amendment rights if officer does not have probable cause that suspect presents threat of harm to officer or others). If a fact finder accepts plaintiff's version of events, that the car was not moving and that Lien had time to get out of its way when Schlitz fired, then the unlawfulness of Schlitz's use of force would have been apparent "in the light of pre-existing law." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002); see also Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 763 (2d Cir. 2003) ("But this question——whether it was reasonable for [defendant Officer] Breen to believe that his life or person was in danger——is the very question upon which we have found there are genuine issues of material fact.").

**V**

Plaintiff asserts claims for negligence, assault, and battery under Arizona law. Defendants argue that these claims fail as a matter of law because Schlitz's use of force was justified, and therefore defendants cannot be liable. See A.R.S. § 13-413 (no civil liability for justified conduct). Under Arizona law, the use of deadly force by a police officer is justified when the officer reasonably believes that it is necessary to "defend himself or a third person from what the peace officer reasonably believes to be the use or imminent use of deadly physical force." A.R.S. § 13-410(C). The use of deadly force may be reasonable even if the officer was negligent in creating the situation that put him in danger, and his negligence proximately caused the injury. Garcia v. U.S., 826 F.2d 806, 810 (9th Cir. 1987).

The state law claims raise the same issue of fact as plaintiff's Fourth Amendment claim: the reasonableness of Schlitz's belief that deadly force was necessary to defend Lien from the use of deadly force. A fact finder may determine that Schlitz could not have

1 reasonably believed he needed to protect Lien from the imminent use of deadly physical
2 force when he shot at the Mustang. Therefore, A.R.S. § 13-410 does not entitle defendants
3 to summary judgment on plaintiff's claims for negligence, assault, and battery.

4 Defendants also argue that the assault and battery claims fail because the shooting was
5 an act of justifiable self-defense. The use of physical force against another is justified "to
6 the extent a reasonable person would believe that physical force is immediately necessary
7 to protect himself against the other's use or attempted use of unlawful physical force."
8 A.R.S. § 13-404(A). As we have explained, there is a dispute of material fact regarding the
9 reasonableness of Schlitz's belief that physical force was immediately necessary to protect
10 Lien. Therefore, the shooting was not justifiable self-defense as a matter of law.

11 In addition, a finding of an unreasonable use of force could support a determination
12 that Schlitz acted with intent to cause harmful contact, an element of both assault and battery.
13 See Restatement (Second) of Torts §§ 18, 21 (1965). It could also demonstrate a breach of
14 the standard of care, required for plaintiff's negligence claim. See Gipson v. Kasey, 214
15 Ariz. 141, 143, 150 P.3d 228, 230 (2007).

16 Defendants also incorrectly argue that plaintiff's claims for assault, battery, and
17 negligence abated at the time of plaintiff's death. Reply at 9. In Arizona, these causes of
18 action survive death and "may be asserted by or against the personal representative" of the
19 decedent. A.R.S. § 14-3110.

20 We therefore deny summary judgment as to plaintiff Almaraz's claims for negligence,
21 assault, and battery. However, the Estate of Celestina Bianca Manuel cannot be a party
22 plaintiff to the state law claims because Manuel has survivors. See A.R.S. § 12-612(A)
23 (estate can only be party in wrongful death action if there are no survivors). Accordingly,
24 we dismiss the Estate of Celestina Bianca Manuel as plaintiff to the state law claims.

## VI

26 Plaintiff concedes that this is not a punitive damages case. Response at 17. We
27 therefore grant summary judgment to defendants on plaintiff's claim for punitive damages.

## VII

1 Defendants argue that plaintiff has not stated a claim against defendants Lien or
2 Reagan. Plaintiff concedes that she has no claim against Reagan. Response at 17. Plaintiff
3 does not address defendants' argument that Lien cannot be liable because he did not fire his
4 weapon or otherwise harm the decedent. We agree that plaintiff has not stated a Fourth
5 Amendment or state law claim against Lien. All of plaintiff's claims arise from Schlitz's
6 decision to shoot at the Mustang, not from any action that Lien took. It is therefore ordered
7 dismissing defendants Reagan and Lien.

**VIII**

**IT IS ORDERED DENYING** plaintiff's motion to withdraw the expert report of Gaylan Warren (doc. 71).

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendants' motion for summary judgment (doc. 60).

**IT IS ORDERED GRANTING** summary judgment for defendant City of Mesa on plaintiff's Fourth Amendment claim.

**IT IS ORDERED GRANTING** summary judgment for defendants on plaintiff's claim for punitive damages.

**IT IS ORDERED DISMISSING** the Estate of Celestina Bianca Manuel as plaintiff to plaintiff's state law claims.

**IT IS ORDERED DISMISSING** defendant Officer Reagan and defendant Officer Lien.

**IT IS ORDERED DENYING** defendants' motion for summary judgment as to all other claims.

Based on the foregoing, the only remaining factual dispute is the propriety of Schlitz's use of deadly force. The claims remaining in this case are: (1) Almaraz's and the Estate of Manuel's Fourth Amendment claim against defendant Officer Schlitz, pursuant to 42 U.S.C. § 1983; (2) Almaraz's claim for negligence against defendants Schlitz and the City of Mesa; (3) Almaraz's claim for assault against defendants Schlitz and the City of Mesa; (4) Almaraz's claim for battery against defendants Schlitz and the City of Mesa; and (5)

Almaraz's claim for wrongful death against defendants Schlitz and the City of Mesa.

DATED this 25th day of August, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge